IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-38-FL-BM

DANIEL SKINNER,                          )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )        **MEMORANDUM AND**
                                         )        **RECOMMENDATION**
FRANK BISIGNANO,                         )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

Plaintiff Daniel Skinner ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his claim for disability benefits under the Social Security Act. This matter is before the court on Plaintiff's brief [DE-11] ("Pl.'s Brief") seeking judgment in his favor, Defendant's responsive brief [DE-13] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-14] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-11] be allowed, Defendant's brief [DE-13] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, disability insurance benefits ("DIB") and an application for supplemental security income ("SSI") on September 16,

2021, each alleging disability beginning December 1, 2017. Transcript of Proceedings ("Tr.") 91, 251-57. His claim was denied initially. Tr. 84-102, 122-31. Plaintiff filed a request for reconsideration (Tr. 140-41), and was denied upon reconsideration on January 18, 2023 (Tr.103-21, 142-49). On January 20, 2023, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 150-51. A hearing before the ALJ was held on September 6, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 46-83. Prior to the hearing, Plaintiff submitted a brief requesting to amend his alleged onset date from December 1, 2017, to September 16, 2021. Tr. 49, 21. As the amended alleged onset date was after June 30, 2020, Plaintiff's date last insured, this amendment effectively withdrew Plaintiff's request for hearing for the Title II application. Tr. 21. Plaintiff confirmed at the hearing that Plaintiff understood the consequences of amending the alleged onset date. Tr. 49. On January 2, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 18-45.

On February 15, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 249-50. On November 20, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 7-13. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is

2

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

### A. Five-Step Analysis

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent

3

steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(4).

## B.     Materiality of Drug Addiction or Alcoholism

If, under the above analysis, a claimant is found to be disabled and there is medical evidence that the claimant has drug addiction or alcoholism, an additional determination is required—namely, whether such substance abuse is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). If the substance abuse is found to be material, the claimant cannot be considered disabled under the Act. *See* 42 U.S.C. § 1382c(a)(3)(J) (providing that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"). The burden of proving that the drug addiction or alcoholism is not material falls on the claimant. Social Security Ruling ("S.S.R.") 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013) ("The claimant has the burden of proving disability throughout to sequential evaluation process."); *see also McCray v. Colvin*, C/A No. 1:13-173-SVH, 2014 WL

4

3798835, at *13 (D.S.C. July 31, 2014) ("If the medical evidence contains indications of drug addiction or alcoholism, '[t]he claimant bears the burden of proving that drug or alcohol addiction was not a contributing factor material to the disability determination.'") (alterations in original) (quoting *Newsome v. Astrue*, 817 F. Supp. 2d 111, 126 (E.D.N.Y. 2011)).

The key factor examined in making the materiality determination on drug addiction or alcoholism is whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). To make this determination, an evaluation is made regarding which of the physical and mental limitations that the claimant has when using drugs or alcohol would remain if he stopped such use and then whether any of the remaining limitations would be disabling. *Id.* § 416.935(b)(2). If the remaining limitations are found not disabling, the claimant's substance abuse is deemed a contributing factor material to the determination of disability, and the claimant is determined to be not disabled. *Id.* § 416.935(b)(2)(i). On the other hand, if the remaining limitations are found to be disabling, the substance abuse is deemed not to be material, and the claimant is deemed disabled. *Id.* § 416.935(b)(2)(ii).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 40. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 16, 2021, the amended alleged onset date. Tr. 24.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: post-traumatic stress disorder; major depressive disorder; opioid use disorder; polysubstance abuse; and tear of the anterior cruciate ligament and medial collateral ligament of the right knee status post right knee arthroplasty. Tr. 24. The ALJ also found Plaintiff had the non-severe impairment of

5

chronic low back pain.  Tr. 24.  However, at step three, the ALJ concluded that even with Plaintiff's substance use, these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 24.

Applying the technique prescribed by the regulations, including the substance use disorder, the ALJ found that Plaintiff's mental impairments have resulted in mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; marked limitation in concentrating, persisting, or maintaining pace; and  marked limitation in adapting or managing oneself.  Tr. 24-25.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, including his substance use, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [H]e must be able to alternate position for 1-2 minutes after every 1 hour of sitting. He can stand and/or walk for 4 hours in an 8-hour workday, representing the ability to stand and/or walk for 30 minutes then needing to sit down for 30 minutes before standing or walking again.  He can occasionally climb, balance, stoop, kneel, crouch, and crawl.  He can frequently work around unprotected heights and moving mechanical parts.  He is able to perform simple, routine, and repetitive tasks and use judgment to make simple, work related decisions.  He can tolerate occasional interaction with supervisors, coworkers, and the general public.  He can tolerate less than occasional changes to simple work as described; he would be off-task 20 percent of the workday and absent 2 or more workdays per month.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996).  "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3.  "Sitting" generally totals about 6 hours of an 8-hour workday.  *Id.*  A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1.  *Id.*

6

Tr. 26.

In making this assessment, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms to be generally consistent with the evidence when the substance use is included.  Tr. 27.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a bartender, waiter, and food salesclerk.  Tr. 34.  At step five, upon considering Plaintiff's age, education, work experience, and RFC, including the substance use disorder, the ALJ determined Plaintiff was not capable of making an adjustment to other work that existed in significant numbers in the national economy, and therefore "[a] finding of 'disabled' would be supported under the framework of the [regulations]."  Tr. 35.

The ALJ then continued the analysis in order to determine whether a substance use disorder is a contributing factor material to the determination of disability.  Tr.  22.  Accordingly, the ALJ made findings in the sequential evaluation process if Plaintiff stopped the substance use.  The ALJ determined that Plaintiff would continue to have a severe impairment or combination of impairments even if he stopped the substance use.  Tr. 36.  The ALJ next found that such impairment or combination of impairments would not meet of equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.994(b)(5)(i)).  Tr. 36.

Applying the technique prescribed by the regulations, the ALJ found that if Plaintiff's substance use stopped, Plaintiff's mental impairments result in mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or

managing oneself.  Tr. 24-25.

The ALJ then assessed Plaintiff's RFC, should Plaintiff stop his substance use, and found that Plaintiff had the ability to perform light work with the following limitations:

> [H]e must be able to alternate position for 1-2 minutes after every 1 hour of sitting. He can stand and/or walk for 4 hours in an 8-hour workday, representing the ability to stand and/or walk for 30 minutes then needing to sit down for 30 minutes before standing or walking again.  He can occasionally climb, balance, stoop,  kneel, crouch, and crawl.  He can frequently work around unprotected heights and moving mechanical parts.  He is able to perform simple, routine, and repetitive tasks and use judgment to make simple, work-related decisions.  He can tolerate occasional interaction with supervisors, coworkers, and the general public.  He can tolerate occasional changes to simple work as described.

Tr. 38.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record.  Tr. 38.

At step four, the ALJ concluded that Plaintiff is "still unable to perform his past relevant work."  Tr. 39.  At step five, upon considering Plaintiff's age, education, work experience, and RFC, if Plaintiff stopped substance use, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy.  Tr. 39-40. The ALJ, therefore, concluded that Plaintiff's "substance use disorder is a contributing factor[,] material to the determination of disability because [Plaintiff] would not be disabled if he stopped the substance use (20 [C.F.R. §§ ]416.920(g) and 416.935)."  Tr. 40.

## V.  DISCUSSION

Plaintiff contends that the ALJ erred by failing to explain the omission of a limitation to three step instructions despite concluding that the opinions of the state agency psychological consultants, Bonny Gregory, M.D. ("Dr. Gregory") and Janet Anguas-Keiter, Psy.D ("Dr. Anguas-

Keiter"), were "somewhat persuasive." Pl.'s Brief [DE-11] at 1.[2] The Commissioner counters that the ALJ is not required to include a limitation from a prior administrative finding that she found to be overall "partially persuasive." Def.'s Brief [DE-13] at 1-2. The Commissioner further asserts that "even if the ALJ had included the limitation to '3 step instructions,' Plaintiff has not argued (and cannot show, even if he had not forfeited such argument) that such an inclusion would change the outcome of the decision." *Id.* at 2.

Under 20 C.F.R. § 416.920c, for claims filed on or after March 27, 2017, as here, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the regulation provides five factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings, the five factors being: "(1) Supportability . . . (2) Consistency . . . (3) Relationship with the claimant . . . (4) Specialization . . . [and] (5) Other factors . . . that tend to support or contradict a medical opinion or prior administrative finding." *Id.* §§ 416.920c(c)(1)-(5). The regulation specifies that supportability and consistency are the most important factors in the evaluation. *Id.* § 416.920c(a).

The regulations also require that an ALJ "articulate how [they] considered the medical opinions and prior administrative medical findings in [the] case record." *Id.* In particular, the ALJ must explain how the factors of supportability and consistency were considered for a medical source's medical opinions. *Id.* § 416.920c(b)(2). The ALJ may, but is not required to, explain the remaining factors. *Id.* Additionally, among the articulation requirements is the requirement that

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

the ALJ engage in a source-level articulation. *Id.* § 416.920c(b)(1). While the ALJ does not need to articulate how they considered the § 416.920c(c) factors for each individual medical opinion, the ALJ must articulate how they considered the factors for each medical source that has provided a medical opinion(s) or prior administrative medical finding(s). *Id.*

For purposes of the discussions herein, the relevant findings from the opinions of state agency psychological consultants Dr. Gregory and Dr. Anguas-Keiter are essentially identical. *Cf.* Tr. 95-100 with Tr. 114-19. In the written decision, the ALJ noted the findings of Dr. Gregory and Dr. Anguas-Keiter that

> [Plaintiff's] mental impairments, even with ongoing substance abuse, result in mild limitation in understanding, remembering or applying information; moderate limitation in interacting with others; moderate limitation in his ability to concentrate, persist or maintain pace, and moderate limitations in his ability to adapt or manage[, and that Plaintiff] could complete 3-step instructions and maintain concentration, persistence or pace in a low-production work environment with low stress.

Tr. 33.

The ALJ found both opinions to be "somewhat persuasive." *Id.* The ALJ opined that while each consultant's findings were "generally supported by the evidence she cited," they were "not fully consistent with the record in [its] entirety and appears to minimize the [Plaintiff's] symptoms when he is using substances." *Id.* Specifically, the ALJ found that when Plaintiff is "sober or not abusing substances, he would not require a 'low production' work environment." *Id.* The ALJ further criticized the term "low stress" for being "vague and not defined." *Id.*

As a general rule, "ALJs are not required to accept all components of a witness' discussion about a claimant's limitations just because the ALJ finds them to be generally persuasive." *Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) (unpublished); *see also Morgan v. Colvin*, No. 5:15-CV-00266-D, 2016 WL 4217822, at *5

10

(E.D.N.C. July 21, 2016) ("It is well-settled that in according significant weight to a medical opinion, an ALJ is not bound to accept or adopt all the limitations set forth therein.") (collecting cases), *report and recommendation adopted*, No. 5:15-CV-266-D, 2016 WL 4218333 (E.D.N.C. Aug. 9, 2016); *see also Godfrey v. Kijakazi*, No. 6:20-CV-2504-TMC, 2022 WL 951620, at *5 (D.S.C. Mar. 30, 2022) (citations omitted) ("[T]here is no rule or regulation that simply because the ALJ finds a medical opinion generally persuasive, he must include each and every aspect of the medical opinion in his RFC assessment."). Furthermore, "the law does not require the RFC to mirror a medical opinion; rather, the ALJ must consider the record as a whole." *Vanderpool v. Berryhill*, No. 5:18-CV-44-RJ, 2019 WL 118414, at *4 (E.D.N.C. Jan. 7, 2019). Yet an ALJ must still "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." S.S.R. 96-8p (Jul. 2, 1996).

Multiple courts in this circuit, including this court, have found remand appropriate where an ALJ failed to explain why he or she did not include certain limitations from a medical opinion that the ALJ had found less than fully persuasive. *See Nevels v. Comm'r of Soc. Sec.*, No. 5:22-CV-424-M-KS, 2023 U.S. Dist. LEXIS 212326, at *14 (E.D.N.C. Oct. 28, 2023) (remanding where the ALJ did not explain the decision to omit RFC limitations to "1-3 step instructions" in a medical opinion, which the ALJ found "most persuasive"); *Issette v. Kijakazi*, No. 5:20-CV-200-D, 2021 U.S. Dist. LEXIS 158164, at *14 (E.D.N.C. Aug. 2, 2021) ("The ALJ's discussion of Dr. Carbonell's opinion[, which the ALJ gave some weight,] is insufficient for the court to trace why he adopted some portions of the opinion and rejected others."); *Foster v. Saul*, No. CV 9:20-1734-BHH-MHC, 2021 WL 1842313, at *22 (D.S.C. Apr. 22, 2021) (finding remand appropriate, where the ALJ did "not accurately or adequately explain how or to what extent evidence in the record contradicts the restrictions set forth in the DDS medical consultant's opinion[, which the ALJ found

11

partially persuasive] or otherwise explain his reasoning"), *report and recommendation adopted*, No. CV 9:20-1734-BHH, 2021 WL 1840799 (D.S.C. May 6, 2021).

Here, the ALJ found the opinions of Dr. Gregory and Dr. Anguas-Keiter to be "somewhat persuasive" (Tr. 33), but does not explain why she did not include a limitation to three step instructions in the RFC. While the ALJ contends that the opinions of Dr. Gregory and Dr. Anguas-Keiter "appear to minimize [Plaintiff's] symptoms when he is using substances," the ALJ does not include a limitation to three step instructions in either RFC (Tr. 26, 38) in the decision. Accordingly, this explanation fails to account for the ALJ's decision not to include a limitation to three step instructions in Plaintiff's RFC. Similarly, while the term "low stress" may be "vague and not defined," the ALJ points to no corresponding vagueness in the term "3-step instructions." Tr. 33.

The Commissioner argues that "the rest of the ALJ's decision offers further background for this analysis and supports the ALJ's conclusion that the prior administrative findings were not fully persuasive." Def.'s Brief [DE-13] at 11. The Commissioner claims that based on such evidence, the ALJ appropriately found the opinions of Dr. Gregory and Dr. Anguas-Keiter to be:

> only somewhat persuasive because they fell between the two pictures painted by Plaintiff's records: one in which, as a result of active substance use, he was distractable, tangential, and unable to maintain a regular schedule; and a second, when he was sober, taking classes, seeking employment, and engaged in treatment.

*Id.* at 14.

Yet as noted above, this dichotomy does not explain the ALJ's decision not to include a limitation to three step instructions in either RFC. Tr. 26, 38. Although an ALJ is not required to include every limitation from a medical opinion in an RFC finding merely because the ALJ found the opinion somewhat persuasive, *cf. Nevels*, No. 5:22-CV-424-M-KS, 2023 U.S. Dist. LEXIS

12

212326, at \*14; *Issette*, No. 5:20-CV-200-D, 2021 U.S. Dist. LEXIS 158164, at \*14 (E.D.N.C. Aug. 2, 2021), an ALJ must still satisfy the requirement to "explain how any material inconsistencies or ambiguities in the case record were considered and resolved." SSR 96-8p, 1996 SSR LEXIS 5, \*19, 1996 WL 374184, at \*7.

Here, the ALJ's discussion of Dr. Gregory and Dr. Anguas-Keiter's opinions is insufficient to follow why she adopted some portions of the opinions and not the limitation to three step instructions. This lack of explanation frustrates the court's meaningful review of the ALJ's decision.

The Commissioner argues that any failure by the ALJ to include a limitation to three step instructions in the RFC is harmless as any such limitation does not conflict with jobs requiring at least a reasoning level of two. Def.'s Brief [DE-13] at 16. The undersigned does not find that Plaintiff waived the ability to respond to this argument by failing to preemptively anticipate it. *See Bender v. Comm'r of Soc. Sec.*, No. 11-CV-1546, 2012 U.S. Dist. LEXIS 128114, at \*25 (N.D. Ohio Aug. 17, 2012) ("A reply brief provides a plaintiff the opportunity to respond to arguments raised for the first time in the defendant's brief.").

As noted by the parties, courts are split within this circuit on whether a limitation to one to three step instructions would be consistent with a reasoning level of two.[3] *Compare Walker v.*

---

[3] While one of the jobs cited by the VE, mail clerk, *see* 1991 WL 671813, DOT code 209.687-026, has a GED reasoning level of three, the other jobs cited by the VE, router, 1991 WL 672123, DOT code 222.587-038, and routine clerk, 1991 WL 672133, DOT code 222.687-022, which both have a GED reasoning level of two, were cited in sufficient numbers standing alone to support the ALJ's findings at step five of the sequential evaluation process. *See* Tr. 39 (providing 22,500 jobs and 106,000 jobs in the national economy for router and routing clerk, respectively, with in the national economy); *see also See, e.g.*, *Dixon v. Saul*, No. 4:20-CV-53-FL, 2021 U.S. Dist. LEXIS 39496, at \*11 (E.D.N.C. Jan. 26, 2021) (finding 5,600 jobs in the national economy sufficient); *Spruill v. Astrue* , No. 4:10-CV-00178-FL, 2011 U.S. Dist. LEXIS 129499 , at \*8 (E.D.N.C. Oct. 13, 2011) (finding 3,259 positions available in the national economy sufficient); *Hodges v. Apfel*, No. 99-2265, 2000 U.S. App. LEXIS 1112 , at \*1 (4th Cir. Jan. 28, 2000) (finding as few as 153 jobs available in the region sufficient); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (finding as few as 110 jobs available in the region sufficient).

13

*Berryhill*, No. 5:17-CV-00090-FDW, 2018 WL 709976, at *5 (W.D.N.C. Feb. 5, 2018) ("As Reasoning Code 2 requires the ability to understand detailed instructions, a conflict seems to exist with the RFC limitation of '1-3 step instructions.'") (citations omitted); *Dellinger v. Berryhill*, No. 3:17-CV-00676-RJC-DSC, 2019 U.S. Dist. LEXIS 49321, at *7 (W.D.N.C. Mar. 25, 2019) ("[T]he Court does find that an apparent conflict exists between a limitation to following short, simple instructions—such as one-to-three step instructions—and Reasoning Level 2 jobs."); *Mahnken v. Comm'r of Soc. Sec.*, No. 3:21-CV-00349-FDW, 2022 WL 4591804, at *3 (W.D.N.C. Sept. 29, 2022) ("Level two and level three reasoning are inconsistent with Claimant's RFC in this case because a restriction to 'one to three step work process[es]' is plainly a description of 'short' instructions, and thus is inconsistent with the 'detailed' instructions required by GED reasoning level two."); *with Horton v. Berryhill*, No. 118-CV-01331-TSE-MSN, 2019 WL 13051367, at *11 (E.D. Va. May 17, 2019), ("Specifically, a limitation for a 'three step instruction' would not prevent plaintiff from performing any of the representative jobs identified by the VE. The router and office helper positions are classified as GED Reasoning Level 2."), *report and recommendation adopted sub nom. Horton v. Kijakazi*, No. 1:18-CV-1331, 2021 WL 4200001 (E.D. Va. Sept. 14, 2021); *Spurlock v. Berryhill*, No. 1:17CV411, 2018 WL 791302, at *7 (M.D.N.C. Feb. 8, 2018) (finding that "no apparent conflict existed between the RFC's limitation to one to three step instructions and the RDL of 2 required by the VE's cited jobs."), *report and recommendation adopted*, No. 1:17-CV-411, 2018 WL 4931610 (M.D.N.C. Mar. 21, 2018).

The undersigned agrees with courts that find that a limitation to three step instructions creates an apparent conflict with a GED reasoning level of two.[4] The Dictionary of Occupational

---

[4] On January 6, 2025, the Social Security Administration ("SSA") rescinded S.S.R. 00-4p and replaced it with S.S.R. 24-3p: Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions. *See* S.S.R. 24-3p, 2024 WL 5256890 (December 6,

14

Titles describes a reasoning level of "one" to consist of "commonsense understanding to carry out simple one- or two-step instructions." Dictionary of Occupational Titles, Appendix C. Conversely, a reasoning level of "two," consists of "[a]pply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal[ing] with problems involving a few concrete variables in or from standardized situations."). *Id.* While the ability to complete three step instructions exceeds the demands of reasoning level one, *cf. Spurlock v. Berryhill*, No. 1:17CV411, 2018 WL 791302, at *6 ("[O]ne to three step instructions which, on its face, requires more mental ability than the one to two step instructions of [Reasoning Development Level] 1."), it does not necessarily follow that the ability to complete three step instructions would allow an individual to "carry out detailed but uninvolved written or oral instructions [and] [d]eal[ing] with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, Appendix C; *see also Walker*, No. 5:17-CV-00090-FDW, 2018 WL 709976, at *5 ("As Reasoning Code 2 requires the ability to understand detailed instructions, a conflict seems to exist with the RFC limitation of '1-3 step instructions.'").

Accordingly, if the ALJ were to include a limitation to three step instructions in the RFC, excluding substance use, it could be outcome determinative. The undersigned, therefore, RECOMMENDS REMAND on this issue. On remand, the ALJ should consider the evidence discussed above as well as all other relevant evidence in accordance with the applicable law and regulations. To be clear, the undersigned expresses no opinion regarding whether Plaintiff does or

---

2024). The ALJ decision in this case was issued on January 2, 2024. S.S.R. 24-3p notes that it expects that federal courts will review final administrative decisions using the rules in effect at the time the final decision was issued. Accordingly, S.S.R. 00-4p governed the ALJ's conduct in this case. S.S.R. 00-4p requires the ALJ to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the VE and DOT. *See* S.S.R. 00-4p. S.S.R. 24-3p provides that "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of [S.S.R. 24-3p], [i.e., January 6, 2025, ]we will apply [S.S.R. 24-3p] to the entire period at issue in the decision we make after the court's remand." S.S.R. 24-3p. Accordingly, upon remand this case will be subject to the requirements of S.S.R. 24-3p.

does not require additional limitations based upon the medical and other evidence.  The ALJ should also include a narrative discussion of how the evidence supports the conclusions reached, in order to facilitate meaningful review if the case is again before the court.  *See Monroe v. Colvin*, 826 F.3d 176, 189;  *DeLoatche*, 715 F.2d at 150 ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

## VI.  CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-11] be ALLOWED, Defendant's brief [DE-13] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel.  Each party shall have until **March 9, 2026**, to file written objections to this Memorandum and Recommendation.  The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions.  *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.  Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or March 16, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and**

**Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 27th day of February, 2026.

_____
Brian S. Meyers
United States Magistrate Judge

17